IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEBRASKA

| | | |
|---|---|---|
| ROBERT EDWARD ADAMS, | ) | |
| | ) | |
| Plaintiff, | ) | 4:12CV3239 |
| | ) | |
| v. | ) | |
| | ) | |
| CAROLYN W. COLVIN, Acting | ) | MEMORANDUM AND ORDER ON |
| Commissioner of the Social Security | ) | REVIEW OF THE FINAL DECISION |
| Administration, | ) | OF THE COMMISSIONER OF THE |
| | ) | SOCIAL SECURITY |
| Defendant. | ) | ADMINISTRATION |
| | ) | |

On December 6, 2012, Robert Edward Adams filed a complaint against Michael J. Astrue, who was then serving as Commissioner of the Social Security Administration.[1]  (ECF No. 1.)  Adams seeks a review of the Commissioner's decision to deny his application for disability insurance benefits under Title II of the Social Security Act (the Act), 42 U.S.C. §§ 401 et seq.  See 42 U.S.C. § 405(g) (providing for judicial review of the Commissioner's final decisions under Title II).  The Commissioner has filed an answer to the complaint and a transcript of the administrative record.  (See ECF Nos. 10-11.)  In addition, the parties have filed briefs in support of their respective positions.  (See Pl.'s Br., ECF No. 15; Def.'s

---

[1]

On February 14, 2013, Carolyn W. Colvin was appointed to serve as Acting Commissioner of the Social Security Administration; shortly thereafter, she was automatically substituted as a party in this case pursuant to Federal Rule of Civil Procedure 25(d).  (See Notice of Substitution, ECF No. 14.)

Br., ECF No. 20; Pl.'s Reply Br., ECF No. 23.)  I have carefully reviewed these materials, and I find that the Commissioner's decision must be affirmed.

## I.   BACKGROUND

Adams protectively filed an application for disability insurance benefits on August 29, 1978 (Transcript of Social Security Proceedings (hereinafter "Tr.") at 82, 472.)[2]  The application was denied on initial review, (id. at 82, 94-97), and on reconsideration (id. at 86, 107-110).  Adams then requested a hearing before an Administrative Law Judge (ALJ).  (Id. at 111-12.)  This request was granted, and a hearing was held on September 8, 2011.  (Id. at 42.)[3]  In a decision dated September 21, 2011, the ALJ concluded that Adams "has not been under a disability, as defined in the Social Security Act, from August 31, 2005, the amended onset date, through the date of this decision."  (Id. at 27 (citation omitted); see also id. at 17-28).  Adams requested that the Appeals Council of the Social Security Administration review the ALJ's decision.  (Id. at 12.)  This request was denied, (see id. at 1-3), and therefore the ALJ's decision stands as the final decision of the Commissioner.

---

[2]

Adams also protectively filed an application for childhood disability insurance benefits on March 1, 1993. (See Tr. at 83.) However, Adams later amended his alleged onset date from April 1, 1974, to August 31, 2005, (id. at 45-48), and thereby withdrew the application for childhood disability insurance benefits, (id. at 17-18). In short, the application for childhood disability benefits is not at issue in this action.

[3]

The hearing was initially scheduled for June 20, 2011, but it was continued so that additional records could be obtained.  (See Tr. at 34-41.)

## II.   SUMMARY OF THE RECORD

On his Disability Report forms, Adams claimed that he became disabled on April 1, 1974, which is his date of birth, due to cerebral palsy, "'drop foot' syndrome," left Achilles heel pain, lower back "tightening," and lower extremity pain, tightening, and muscle spasms.  (Tr. at 445, 476.)  During the hearing before the ALJ, Adams amended his alleged onset date to August 31, 2005.  (Id. at 45-48.)  He was 37 years old on the date of the hearing before the ALJ, and he has a high school education.  (Id. at 48-49.  See also id. at 49, 450 (indicating that Adams briefly attended college).)  He has work experience as a waiter, call center representative, driver, factory production line worker, cook, "prep cook," copy service worker, cashier, restaurant manager, bartender, lawn care service worker, brewery assistant, stocker, auto detailer, newspaper circulation supervisor, printing assistant, grocery bagger, and dish washer.  (Id. at 397-434, 446, 467-69.)

### A.   Medical Evidence[4]

As noted above, Adams asserted that he was born with cerebral palsy and that he later developed "'drop foot' syndrome," left Achilles heel pain, lower back "tightening," and lower extremity pain, tightening, and muscle spasms.  (Tr. at 445, 476.)  Adams stated that he had heel cord lengthening procedures in 1979.  (Id. at 522.)  On October 1, 1990, Adams had surgery at Lincoln General Hospital for a fractured right ankle.  (Id. at 521.)

The medical evidence following the amended onset date of August 31, 2005, shows that on January 22, 2010, Adams went to St. Elizabeth Regional Medical Center after four days of back pain.  (Id. at 545, 548.)  The hospital notes

---

[4]      My review of the medical evidence emphasizes the records cited by the parties in their briefs. (See generally Pl.'s Br., ECF No. 15; Def.'s Br. at 2-5, ECF No. 20; Pl.'s Reply Br., ECF No. 23.)

indicate "CP-mild" and state that Adams reported he had back pain for four years. Adams was discharged with hydrocodone for pain and cyclobenzapine for muscle spasms. (Id. at 550.)

On August 17, 2010, Adams began seeing Anthony Cox, PA-C, North Lincoln Family Medical Center, P.C.  Cox stated that Adams reported he had cerebral palsy which affected only his legs. (Id. at 559.) Adams said he had leg spasms which improved when he stretched his legs. (Id.) Adams reported that he recently had pain in his knees and ankles, but he believed it was from a lack of exercise and that he hoped to begin exercising again soon. If the pain did not improve, he would return to the clinic. (Id.) Adams said he had been unable to work because of his leg problems. (Id.) Cox noted that Adams had an abnormal gait. (Id.)

Adams saw Cox again on December 9, 2010, to discuss gout. (Id. at 558.) Adams also asked for a note about his cerebral palsy because it was difficult for him to work a full day. (Id.) He said his legs tire and cause discomfort. (Id.) He was only able to exercise on a bicycle for about 15 minutes before he has discomfort and fatigue in his legs. (Id.) Adams had no insurance and said he cannot afford therapy. (Id.)

Cox wrote a letter on December 14, 2010, stating that Adams' cerebral palsy affected his lower extremities, and caused him frequent leg spasms, discomfort, and fatigue. (Id. at 560.) Cox stated that Adams' ability to earn a living was impacted by cerebral palsy because he cannot work at a job that required him to spend a significant amount of time on his feet, and it was difficult for him to maintain full-time gainful employment. (Id.) The letter was also signed by Charles Kreshel, M.D. (Id.)

Cox signed an application for Adams to get a handicapped parking permit on May 6, 2011. (Id. at 555.)  Cox stated in a report that Adams came to the clinic for followup of cerebral palsy which affects his lower extremities. (Id. at 556.) Adams reported his condition was unchanged, but he had to quit his job as a waiter because of problems with his legs. (Id.) Adams said he was fatigued and uncomfortable by the end of a work shift. (Id.) He tried working in the kitchen doing prep work, but that required him to stand for a majority of the time. (Id.) Adams stated he was currently waiting for a part-time position in a call center. He asked if there were any supplements he could take for the stiffness in his knees. (Id.) Adams also reported lower back stiffness and said he had not been able to exercise regularly and cannot afford therapy or to join a gym. (Id.) Cox recommended water therapy, but Adams said he could not afford to pay for therapy. (Id.) Adams said he did not have as much stiffness when he was exercising regularly. (Id.) Adams stated that he hoped to qualify for disability benefits so he could get therapy and get into a formal exercise program. (Id.)

Adams underwent a psychological evaluation at the Psychological Consultation Center at the University of Nebraska-Lincoln Department of Psychology. (Id. at 567.)  He took part in individual and structured clinical interviews and was administered a number of psychological tests. (Id.)  The report of the evaluation was submitted on August 15, 2011, by Milena Stoyanova, M.A., psychology extern, and Mary Fran Flood, Ph.D., supervising clinical psychologist. (Id. at 571.)  Adams was diagnosed as having anxiety disorder not otherwise specified; major depressive disorder, recurrent, in partial remission; cerebral palsy; and unemployment and financial problems. He had a GAF of 55.[5] (Id. at 571.)

---

[5]

"The GAF is a numeric scale ranging from zero to one hundred used to rate

5

During the evaluation, Adams described concern about other people judging him negatively due to his medical condition. (Id. at 568.) In the past, he told his friends that he had been in a car accident as a child rather than telling them he had cerebral palsy. (Id.) He reported that he had lost interest in activities and in spending time with friends. He lacked motivation and often stayed home and watched television. He had not received any treatment for anxiety or depression. (Id.)

Adams' level of risk was within normal limits as he did not report any suicidal ideation or actions. (Id. at 568.) He reported no medication for psychological problems. (Id. at 569.) Adams reported that he experienced anxiety in social situations, such as at parties and meetings, and in initiating and maintaining conversations with unfamiliar people. (Id.) His main concern is that others will make fun of him because of his walk. His fear of being negatively judged has affected his overall functioning, and he avoids attending social gatherings and social settings that are unfamiliar to him. (Id.)

Adams reported that he had experienced episodes of depressed mood since the age of 12, but the episodes had become more frequent over time as he was unable to stay at a job for longer than four months. (Id.)  The diagnosis of major depressive disorder, recurrent, in partial remission was appropriate given that some symptoms of depression are still present after his most recent episode. He experienced moderate depressive symptoms over the previous two weeks. (Id. at 570.)

---

social, occupational and psychological functioning 'on a hypothetical continuum of mental health-illness.'" Pate-Fires v. Astrue, 564 F.3d 935, 937 n. 1 (8th Cir. 2009) (quoting American Psychiatric Association, Diagnostic and Statistical Manual of Mental Disorders 32 (4th ed. 1994) (hereinafter DSM-IV)).

The clinical impression was that Adams had no pervasive personality problems. His feelings of inferiority are the result of his feelings and beliefs about having a disability. (Id.) Adams' cognitive function was in the average to above average range with an IQ of 113. (Id.)

The report recommended that Adams undergo outpatient psychotherapy to address his anxiety from fear of being judged by others due to his physical limitations.  It would also be helpful for treatment to address skills to manage future major depressive episodes. (Id. at 571.)

## B. Vocational Evidence

Adams completed a pre-employment musculoskeletal screening on January 11, 2006, for a position as a driver with Cash-Wa of Lincoln. (Id. at 562.)  At that time, he indicated he had no restrictions for lifting, pushing, pulling, squatting, bending, or reaching. (Id. at 562.) He was not taking medication or seeing a physician. (Id.) He stated he had no problems with his upper extremities or previous knee injury. (Id.) Daniel Creal, P.T., determined that Adams was at a moderate risk and qualified for the position if accommodations could be made. (Id. at 563.) He demonstrated significantly limited range of motion, below average strength levels, or was unable to perform job simulations. (Id.) Adams was restricted to carrying 125 pounds on stairs. (Id.) He was able to lift 75 pounds from the floor to his waist eight times, 55 pounds from floor to chest 10 times, and 55 pounds from floor to overhead 10 times. (Id. at 564.) He was able to safely push and pull a two-wheeled cart carrying the minimum of 340 pounds. (Id.) However, Adams was unable to safely pull a cart upstairs carrying the minimum of 225 pounds, but he was able to pull the cart upstairs carrying 100 pounds. (Id.)

Glen Knosp, M.D., completed a residual functional capacity report (RFC) on January 12, 2010. (Id. at 534-541.) Knosp stated that Adams was born with

cerebral palsy which affected his lower limbs, while his upper extremities were minimally affected. (Id. at 541.) Adams had drop foot on the right side when he had extended periods of walking, and he had pain in the ankle after walking two blocks. (Id.) Knosp stated that Adams had weakness and stiffness in the musculature of the lower limbs and had problems perceiving temperature in his feet. (Id.) A neurological evaluation showed that Adams' coordination was intact and that he could perform precise movements with his hands. (Id.) He had moderate weakness of extension in the feet and toes while all other muscle groups have normal strength. (Id.) Overall, Knosp stated that Adams would have problems with long periods of standing and walking due to cerebral palsy. (Id.) Knosp stated that Adams was "partly credible" and that he had learned to live with his condition. (Id.)

As to exertional limitations, Knosp indicated that Adams could occasionally lift or carry 20 pounds and frequently lift or carry 10 pounds. (Id. at 535.) He could stand and/or walk with breaks for at least two hours out of an eight-hour workday and could sit for about six hours out of an eight-hour workday. His ability to push and pull was unlimited. (Id.) Adams could occasionally climb, balance, stoop, kneel, crouch, and crawl. (Id. at 536.) Knosp stated that Adams should avoid concentrated exposure to hazards, such as machinery and heights, and should avoid uneven surfaces due to his right foot drop as a result of cerebral palsy. (Id. at 538.)

On March 17, 2010, Jerry Reed, M.D., affirmed the previous RFC report. (Id. at 552.) Adams was able to ambulate independently without assistive devices. (Id.) He had no mental health limitations. (Id.) Reed stated that the recommendation of the initial RFC for sedentary work was still appropriate. (Id.)

## C. Hearing Testimony

At the hearing on September 8, 2011, Adams agreed to amend his disability onset date to August 31, 2005. (Id. at 46-48.) Adams said he had begun working part-time as a cashier at Dickey's Barbecue about three weeks before the hearing. (Id. at 49-51.)   He worked 15 to 20 hours per week and was paid minimum wage of $7.25 per hour. (Id. at 50.) He said he was unable to work more hours because of severe spasms and fatigue. (Id.) Adams reviewed his work history, which included a number of part-time jobs held for short periods, interspersed with several periods of unemployment. (Id. at 51-56.) Adams said he had back issues, depression issues, and gout and arthritis in his ankle making it impossible for him to walk. (Id. at 57-58.)  Adams also said he has challenges with his shoulder and his left elbow, which sometimes swells. (Id. at 68.)

Adams said he has difficulty with sedentary jobs because cerebral palsy causes his muscles to contract when he is not active, (id. at 59), and the contraction of his leg muscles then causes problems with his back. (Id.) He also has pain in his hip after sitting for too long. (Id.at 60.) The physical and mental fatigue from cerebral palsy makes it difficult for him to work full-time. (Id.)

Adams had worked full-time delivering pizzas, driving, and working in a call center, but he said after six or seven months, he begins to have significant pain and spasms. (Id. at 60-61.) When he wakes in the morning, he spends 20 to 40 minutes stretching his leg muscles and back in order to be able to walk. (Id. at 63-64.) When Adams overexerts, he has uncontrollable spasms and twitches that wake him up often through the night. (Id.)  He can work about four hours before mental fatigue affects his personality. And by Wednesday of a work week, he cannot function without severe pain so he often calls in sick on Thursdays or Fridays. (Id.)

Adams said he has had depression and anxiety, but has not received regular treatment because he could not pay for it and he has no health insurance. (Id. at 65.) His anxiety stems from his perception that people are laughing at him or making fun of him. (Id. at 65-66.) His depression stems from his inability to maintain employment. (Id. at 66.) Adams described his depression as an inability to get motivated. He cannot get out of bed and is disconnected from his mother and friends. He avoids going out in public and sits around and worries about paying his bills. (Id.) The depression can last for part of a day or for two to three weeks. (Id.) Fatigue drains him and makes it hard to buy groceries or do laundry. He said he can only go to the grocery store if he can park nearby and can only carry about $20 worth of groceries. (Id. at 70.)  He has no personal life because he is frustrated from the physical or mental fatigue. (Id. at 69.)  Adams stated that cerebral palsy has affected him since he was a child and it requires him to adjust his life on a daily basis. (Id. at 69.)

Amy Botkin, a vocational rehabilitation counselor, testified that Adams would be able to perform the jobs of customer service representative, cashier, or dining room attendant.  (Id. at 71, 75-78.) A worker who needed to recline and rest frequently through the day and could not keep up an appropriate pace for 40 hours a week would have problems with any type of full-time employment.  (Id. at 78-79.)  Adams would also have trouble maintaining employment if he had to miss one-half to one day a week. (Id. at 79.)

### D. The ALJ's Decision

An ALJ is required to follow a five-step sequential analysis to determine whether a claimant is disabled.  See 20 C.F.R. § 404.1520(a).  The ALJ must continue the analysis until the claimant is found to be "not disabled" at steps one, two, four or five, or is found to be "disabled" at step three or step five.  See id.  In

this case, the ALJ proceeded to step four and found Adams to be not disabled. (See Tr. at 20-27.)

Step one requires the ALJ to determine whether the claimant is currently engaged in substantial gainful activity. See 20 C.F.R. § 404.1520(a)(4)(i), (b). If the claimant is engaged in substantial gainful activity, the ALJ will find that the claimant is not disabled. See id. The ALJ found that Adams "worked at the substantial gainful activity level through 2009," and that he was engaged in part-time work at the time of the hearing. (Tr. at 20.)

Step two requires the ALJ to determine whether the claimant has a "severe impairment." 20 C.F.R. § 404.1520(c). A "severe impairment" is an impairment or combination of impairments that significantly limits the claimant's ability to do "basic work activities" and satisfies the "duration requirement." See 20 C.F.R. § 404.1520(a)(4)(ii), (c); id. § 404.1509 ("Unless your impairment is expected to result in death, it must have lasted or must be expected to last for a continuous period of at least 12 months."). Basic work activities include "[p]hysical functions such as walking, standing, sitting, lifting, pushing, pulling, reaching, carrying, or handling"; "[c]apacities for seeing, hearing, and speaking"; "[u]nderstanding, carrying out, and remembering simple instructions"; "[u]se of judgment"; "[r]esponding appropriately to supervision, co-workers and usual work situations"; and "[d]ealing with changes in a routine work setting." 20 C.F.R. § 404.1521(b). If the claimant cannot prove such an impairment, the ALJ will find that the claimant is not disabled. See 20 C.F.R. § 404.1520(a)(4)(ii), (c). The ALJ found that Adams "has the following severe impairment: cerebral palsy with right foot drop." (Tr. at 20 (citation omitted).)

Step three requires the ALJ to compare the claimant's impairment or impairments to a list of impairments. See 20 C.F.R. § 404.1520(a)(4)(iii), (d); see

<u>also</u> 20 C.F.R. Part 404, Subpart P, App'x 1.  If the claimant has an impairment "that meets or equals one of [the] listings," the analysis ends and the claimant is found to be "disabled."  <u>See</u> 20 C.F.R. § 404.1520(a)(4)(iii), (d).  If a claimant does not suffer from a listed impairment or its equivalent, then the analysis proceeds to steps four and five.  <u>See</u> 20 C.F.R. § 404.1520(a).  The ALJ found that Adams "does not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1."  (Tr. at 21 (citations omitted).)

Step four requires the ALJ to consider the claimant's residual functional capacity (RFC)[6] to determine whether the impairment or impairments prevent the claimant from engaging in "past relevant work."  <u>See</u>  20 C.F.R. § 404.1520(a)(4)(iv), (e), (f).  If the claimant is able to perform any past relevant work, the ALJ will find that the claimant is not disabled.  <u>See</u> 20 C.F.R. § 404.1520(a)(4)(iv), (f).   The ALJ determined that Adams "is capable of performing past relevant work as a customer service representative-call center, and cashier."  (<u>Id</u>. at 27.)  Based on this finding, the ALJ concluded that Adams was not disabled between the amended onset date and the date of the decision.  (<u>Id</u>.)

Adams' request for review of the ALJ's decision was denied on October 11, 2012. (Tr. at 1.)

### III.  STANDARD OF REVIEW

I must review the Commissioner's decision to determine "whether there is substantial evidence based on the entire record to support the ALJ's factual

---

[6]

  "'Residual functional capacity' is what the claimant is able to do despite limitations caused by all of the claimant's impairments." <u>Lowe v. Apfel</u>, 226 F.3d 969, 972 (8th Cir. 2000) (citing 20 C.F.R. § 404.1545(a)).

findings." Johnson v. Chater, 108 F.3d 178, 179 (8th Cir. 1997) (quoting Clark v. Chater, 75 F.3d 414, 416 (8th Cir. 1996)).  See also Collins v. Astrue, 648 F.3d 869, 871 (8th Cir. 2011).  "Substantial evidence is less than a preponderance but is enough that a reasonable mind would find it adequate to support the conclusion." Finch v. Astrue, 547 F.3d 933, 935 (8th Cir. 2008) (citations and internal quotation marks omitted).  A decision supported by substantial evidence may not be reversed, "even if inconsistent conclusions may be drawn from the evidence, and even if [the court] may have reached a different outcome."  McNamara v. Astrue, 590 F.3d 607, 610 (8th Cir. 2010).  Nevertheless, the court's review "is more than a search of the record for evidence supporting the Commissioner's findings, and requires a scrutinizing analysis, not merely a 'rubber stamp' of the Commissioner's action." Scott ex rel. Scott v. Astrue, 529 F.3d 818, 821 (8th Cir. 2008) (citations, brackets, and internal quotation marks omitted).  See also Moore v. Astrue, 623 F.3d 599, 602 (8th Cir. 2010) ("Our review extends beyond examining the record to find substantial evidence in support of the ALJ's decision; we also consider evidence in the record that fairly detracts from that decision.").

I must also determine whether the Commissioner's decision "is based on legal error." Collins v. Astrue, 648 F.3d 869, 871 (8th Cir. 2011) (quoting Lowe v. Apfel, 226 F.3d 969, 971 (8th Cir. 2000)).  "Legal error may be an error of procedure, the use of erroneous legal standards, or an incorrect application of the law." Id. (citations omitted).  No deference is owed to the Commissioner's legal conclusions.  See Brueggemann v. Barnhart, 348 F.3d 689, 692 (8th Cir. 2003). See also Collins, 648 F.3d at 871 (indicating that the question of whether the ALJ's decision is based on legal error is reviewed de novo).

# IV.  ANALYSIS

Adams contends that he cannot sustain full-time work and is therefore entitled to disability benefits. He also argues that his mental RFC was not properly determined, that the work done after his alleged onset date was not at the substantial gainful activity, that his lack of treatment was not properly evaluated by the ALJ, that the vocational expert's testimony cannot serve as substantial evidence, that the jobs proposed by the ALJ lie outside his RFC, and that the ALJ improperly assigned weight to the medical source opinions in the record.

## A. Entitlement to Benefits

To establish entitlement to benefits, Adams must show that he is unable to engage in any substantial gainful activity by reason of a medically determinable impairment that has lasted or can be expected to last for a continuous period of not less than 12 months. See 42 U.S.C. §423(d). The Commissioner has interpreted the statutory definition to require that the disability, and not only the impairment, must have existed or be expected to exist for 12 months, and the U.S. Supreme Court has upheld that interpretation in Barnhart v. Walton, 535 U.S. 212, 122 S. Ct. 1265 (2002).

The ALJ wrote:

> After careful consideration of the entire record, the undersigned finds that the claimant has the residual functional capacity to perform light work as defined in 20 CFR 404.1567(b), i.e., he can lift and carry 20 pounds occasionally and ten pounds frequently; sit two hours in an eight-hour workday; stand six hours in an eight-hour workday; and walk six hours in an eight-hour workday.  He requires a sit/stand option.  He cannot climb stairs or ladders; cannot repetitively bend, twist, or turn; and cannot crawl, squat, kneel, or balance.  In addition, he would have a mild limitation in the

ability to understand, remember, and carry out detailed instructions.  Mild is
defined as any limitation in this area is not significant.

(Tr. at 21-22.) The ALJ determined that Adams could perform work as a customer
service representative in a call center or as a cashier. (Tr. 27.) Adams argues that
these jobs are beyond his capacity for sustained work activity.

Substantial gainful activity is work that "involves doing significant physical
and mental activities" and "is the kind of work usually done for pay or profit,
whether or not a profit is realized." 20 C.F.R. § 404.1572(a) - (b). Work may be
substantial even if it is done on a part-time basis or if the claimant does less, gets
paid less, or has less responsibility than in previous work. 20 C.F.R. §
404.1572(a).   If the ALJ determines that the claimant engaged in substantial
gainful activity after the alleged onset date, the ALJ must find the claimant not
disabled without further analysis. See id.; see also Dukes v. Barnhart, 436 F.3d
923 (8th Cir. 2006).     The ALJ determined that Adams had worked at the
substantial gainful activity level through 2009. (Tr. at 20.) At the time of the
hearing, Adams testified that he was working part-time. (Id.)

A rebuttable presumption exists that a claimant is engaging in substantial
gainful activity if his average earnings exceeded $900 per month in 2007, $940
per month in 2008, and $980 per month in 2009. See 20 C.F.R. §
404.1574(b)(2)(ii)(B);  http://www.ssa.gov/OACT/COLA/sga.html.  The  record
shows that Adams earned more than $7,000 working in 2007. (Tr. 20, 284-85, 289,
306-07, 354, 454.) From January through April 2008, Adams earned more than
$4,000. (Tr. 20, 306-07, 354, 454.) In 2009, he earned $2,222 for two months of
work. (Tr. 20, 53-54, 311, 454.) Thus, Adams' earnings exceeded the monthly
substantial gainful activity amounts for these periods, and it is presumed that he
engaged in substantial gainful activity during these periods. The ALJ correctly

concluded that Adams' earnings were above the threshold for substantial and gainful activity through at least 2009. (Tr. at 20.) If the claimant is engaged in substantial gainful activity, the ALJ will find that the claimant is not disabled. See id. Adams did not show that he is unable to engage in any substantial gainful activity and thereby entitled to disability benefits.

*B. Mental RFC*

Adams argues that his mental RFC was not properly determined. The ALJ found that he suffers from nonsevere anxiety and depression, which "do not cause more than minimal limitations in the claimant's mental work activities." (Tr. at 21.)

The ALJ noted that Adams' daily functioning has not been affected as severely as he had alleged and that he has been able to independently sustain activities and interests over time. (Tr. at 27) The ALJ stated that Adams' allegations are inconsistent with medications prescribed and used. (Id.)

The psychological evaluation showed that Adams expressed concerns about being judged by other people. (Id. at 568.) He reported a lack of motivation, but he had not received any treatment for anxiety or depression. (Id.) Nor had he taken any medication for psychological problems. (Id. at 569.) He reported that he had depressed mood since the age of 12. The evaluation found no pervasive personality problems. It was recommended that Adams undergo outpatient psychotherapy. (Id. at 571.)

My review of the record shows that Adams is able to perform a full range of activities of daily living. He works in the afternoon, takes his mother grocery shopping, listens to music, watches television and movies, exercises daily 15 to 20 minutes stretching and swimming, and can perform his personal hygiene. The record does not include any recommendations that he limit his activities to the

degree alleged.  The ALJ evaluated the credibility of the claimant and determined that Adams may have exaggerated the intensity of his symptoms due to heightened distress. (Id.)  The record supports the ALJ's findings related to Adams' mental health.

### C. Work at Substantial Gainful Activity

Adams asserts that the ALJ should have considered his work history as including a number of unsuccessful work attempts. However, substantial gainful activity will only qualify as an unsuccessful work attempt if the claimant's impairment forced him to stop working. See 20 C.F.R. § 404.1574(c). The record shows that since 2007, Adams lost jobs for reasons unrelated to his medical condition, including that he had attendance issues, that he quit a job to look for a better paying job, that he missed work as a result of unreliable transportation and car issues, and that he quit a job because of lack of hours and lack of pay. (Tr. at 20, 53-54, 289, 305-07, 399, 401, 453.) The record does not indicate that Adams was forced to stop working because of his alleged disability. In addition, his jobs did not qualify as unsuccessful work attempts because he worked for substantial earnings.

### D. Lack of Treatment

Adams also asserts that his failure to obtain treatment for physical or mental impairments is a result of his lack of insurance and inability to be able to afford such treatment. However, there was no evidence presented that Adams was denied treatment due to an inability to pay or that he had sought assistance available to indigents. See Riggins v. Apfel, 177 F.3d 689, 693 (8th Cir. 1999).  While economic justifications for the lack of treatment can be relevant to a disability determination, Adams offered no testimony or other evidence that he had been denied further treatment or access to prescription pain medicine on account of

financial constraints. <u>Clark v. Shalala</u>, 28 F.3d 828, 831 n. 4 (8th Cir. 1994). The record shows that Adams sought and received medical treatment when he went to the emergency room for back pain in January 2010. In addition, he saw Cox on a somewhat regular basis with complaints related to flu, gout, and to discuss his cerebral palsy. (Tr. at 556-59.) He sought and received psychological assistance through the Psychological Consultation Center at the University of Nebraska-Lincoln in 2011. Thus, the record does not suggest that Adams lacked access to medical care and therapy for financial reasons.

### E. Vocational Expert's Testimony

Adams argues that the testimony of the vocational expert cannot serve as substantial evidence because the ALJ failed to adequately present a hypothetical question to the expert. The expert testified that the two jobs she determined Adams could hold, customer service representative and cashier, would fit the sit/stand option criteria. (Tr. at 77-78.) However, Adams claims the ALJ failed to specify the frequency with which Adams would need to alternate between sitting and standing. Thus, the vocational expert was not given sufficient information, and Adams asserts that the expert's testimony cannot serve as substantial evidence.

Testimony from a vocational expert is substantial evidence only when the testimony is based on a correctly phrased hypothetical question that captures the concrete consequences of a claimant's deficiencies. <u>Porch v. Chater</u>, 115 F.3d 567 (8th Cir. 1997). The record indicates that the ALJ asked a proper hypothetical question.

### F. Proposed Jobs Lie Outside Adams' RFC

Adams argues that the jobs of customer service representative and cashier lie outside Adams' RFC. The ALJ considered Adams' RFC at step four. The RFC is used to determine whether the impairment prevents the claimant from engaging

in past relevant work. If the claimant is able to perform any past relevant work, the ALJ will find that the claimant is not disabled.

In this case, the ALJ determined that Adams has the RFC to perform light work as defined in 20 C.F.R. § 404.1567(b). (Tr. at 21.) Although the ALJ found that Adams' medically determinable impairment could reasonably be expected to cause his symptoms, Adams' statements about the intensity, persistence, and limiting effects of the symptoms "are not credible to the extent they are inconsistent with the above [RFC] assessment." (Tr. at 21.)

Adams' work history shows that he is capable of working, and despite his complaints of allegedly disabling symptoms, Adams has not taken any medications for those symptoms. (Id.) The ALJ concluded that Adams' RFC is supported by the record and that Adams can perform simple, routine, repetitive work.

I agree with the ALJ's determination that Adams' alleged limitations and his alleged pain level do not preclude all types of work. The objective medical evidence, the absence of more aggressive treatment, medical opinions, and the evidence as a whole support the ALJ's finding.

The U.S. Court of Appeals for the Eighth Circuit has stated that the "absence of an objective medical basis which supports the degree of severity of subjective complaints alleged is just one factor to be considered in evaluating the credibility of the testimony and complaints." Polaski v. Heckler, 739 F.2d 1320, 1322 (8th Cir. 1983). In addition,

The adjudicator must give full consideration to all of the evidence presented relating to subjective complaints, including the claimant's prior work record, and observations by third parties and treating and examining physicians relating to such matters as:

1. the claimant's daily activities;

2. the duration, frequency and intensity of the pain;

3. precipitating and aggravating factors;

4. dosage, effectiveness and side effects of medication;

5. functional restrictions. (Id.)

The court also stated that the adjudicator is not free to accept or reject the claimant's subjective complaints solely on the basis of personal observations. Subjective complaints may be discounted if there are inconsistencies in the evidence as a whole. Id.  The Eighth Circuit has also held that it will not substitute its opinion for that of the ALJ, who is in a better position to assess credibility. Eichelberger v. Barnhart, 390 F.3d 584, 591 (8th Cir. 2004). I will not substitute my opinion as to Adams' credibility, and I find no error in the ALJ's determination that Adams is not disabled.

### G. Improper Weight Assigned Medical Sources

Adams argues that the ALJ accorded improper weight to the medical sources. The ALJ gave less weight to the statements of Cox, the physician's assistant, because Cox is not an acceptable medical source and because his opinion was inconsistent with statements, records, and opinions of other sources. (Tr. at 27.) The ALJ gave substantial weight to the opinions of Knosp and Reed, who are highly qualified physicians and experts in the evaluation of the medical issues in disability claims under the Social Security Act, because they are acceptable medical sources and their opinions are consistent with the record. (Id.)

My review of the record finds that most of the statements made in Cox's reports were based on subjective statements made by Adams. There is no indication that Cox had independent knowledge of the extent of Adams' alleged inability to work. Adams told Cox that he had difficulty standing for long periods.

20

Cox's opinions cannot be given the same weight as those of the physicians who have extensive experience in evaluating individuals for disability. The ALJ made no error in the weight assigned to Cox's opinion.

## V. CONCLUSION

In the case at bar, the ALJ properly considered the inconsistencies between Adams' allegations of a disabling impairment and the other evidence in the record. The inconsistencies include evidence that Adams engaged in substantial gainful activity after the alleged onset date of his disability and that he was working part-time at the time of the hearing. In addition, he had sought and received minimal and inconsistent medical treatment. The medical opinions and evidence do not support a finding of disability. And Adams was able to continue daily activities, and he made inconsistent statements about his ability to work.

As a result of the thorough analysis of the evidence, the ALJ determined that Adams is capable of performing past relevant work as a customer service representative in a call center and cashier, work which does not require performance of work-related activities precluded by the RFC. (Id.) Thus, the ALJ concluded that Adams has not been under a disability as defined in the Social Security Act from the amended onset date through the date of the decision. (Id.)

I find that there is substantial evidence based on the entire record to support the ALJ's factual findings.  Johnson v. Chater, 108 F.3d 178, 179 (8th Cir. 1997). The plaintiff has a disability, but it does not rise to the level necessary to support a finding that he is unable to work. I find that the decision must be affirmed.

IT IS ORDERED that the Commissioner of Social Security's decision is affirmed.

Dated January 22, 2014.

BY THE COURT

Warren K. Urbom
United States Senior District Judge